**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CURTIS LEONARD HAMM | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PX-21-0114 |
| LAURA ARMSTEAD, and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND | * | |
| | * | |
| Respondents. | * | |
| | * | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

Curtis Leonard Hamm brings this habeas corpus Petition pursuant to 28 U.S.C. § 2254, challenging his 2013 state court convictions for first degree assault and use of a handgun. ECF No. 1. The Petition is ready for resolution and no hearing is necessary. *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the Petition and declines to issue a certificate of appealability.

I.     **Background**

The evidence at trial established that on September 16, 2012, Jesse and Benjamin Peart were assaulted by two masked men while walking home. ECF No. 5-2 at 23-26, 135-136. One assailant was armed with a shotgun and the other a wooden ax handle. *Id.* at 31, 150. The assailant with the ax handle hit Jesse Peart on the arm, and the assailant with the shotgun hit Benjamin Peart over the head. *Id.* at 35, 37-38, 144. Both assailants then fled, one on foot and one by car. *Id.* at 40-41; 150-154.

The Peart brothers were able to make it home and call the police. *Id.* at 47, 160. Benjamin Peart identified the perpetrator with the ax handle as Curtis Hamm and the one with the shotgun as "Hiydeen." *Id.* at 149-152, 160. Evidently, as the State's prosecution theory revealed, Hamm allegedly targeted Benjamin Peart because Hamm believed Peart had cooperated against Hamm in a prior criminal matter.

 "Hiydeen" Womack testified at trial in exchange for leniency. ECF No. 5-3 at 25-32. Womack described that on the day of the attack, Hamm told Womack that he had seen Benjamin Peart. ECF No. 5-2 at 247. Womack, driving his aunt's Lexus SUV, went to Hamm's house then returned to his own house to get his shotgun. *Id.* at 270-274. Womack next picked up Hamm's girlfriend, Jasmine Jones, and another man, and they began scoping the neighborhood for Benjamin. *Id.* at 276-278.

Eventually, the three spotted Benjamin, and so they returned to pick up Hamm. When Hamm got into the SUV, he along with Womack sat in the back, and Jones drove with the other man in the front passenger seat. *Id.* at 283. Womack confirmed that when they saw Jesse and Benjamin Peart, Hamm and Womack exited the car, Womack with the shotgun and Hamm with the ax handle. *Id.* at 284-286. Womack also confirmed that Hamm beat Jesse Peart with the ax handle. *Id.* at 290. Lead Detective on the case, Ken Hanna, also testified that law enforcement had recovered a shotgun from Womack's closet, and two masks and an ax handle from the Lexus SUV. *Id.* at 127, 129.

The incident took place close to Hamm's home. At the time of the assault, Hamm was on home detention monitored through a private company, Advantage Sensing Alternative Programs ("Advantage"). At trial, Hamm called Advantage's Program manager, Danielle Winchester, to explain that the home detention equipment does not immediately alert that a detainee is out of

range, but must be specifically programmed to alert.  As for Hamm, his equipment had been programmed to alert when he remained outside the permitted range for six minutes, and on the day of the assault, Hamm's equipment never sent any alerts.  *Id.* at 202-207.  Jones also testified that she and Hamm were home cooking on the evening of September 16, 2012, and he never left the house.  *Id.* at 256-257, 262.

After a full day of deliberations, the jury found Hamm guilty of two counts of first-degree assault and two counts of use of a firearm.  ECF No. 5-4 at 68-69.  On February 11, 2014, Hamm received a total sentence of fifteen years' imprisonment with the first five years to be served without the possibility of parole.  ECF No. 4-1 at 4-5.  On February 25, 2014, Hamm moved for modification of sentence, which the trial court held *sub curia*.  *Id.* at 7.  Hamm also appealed to the Appellate Court of Maryland, which affirmed the conviction.  *Id.*

Hamm next petitioned for state post-conviction relief.  *Id.* at 17-51.  There, Hamm ledged a series of attacks on the quality of his representation at trial.  As he does here, Hamm argued that his trial counsel was ineffective for failing to request a jury instruction on his alibi defense and for failing to appropriately respond to prosecutorial misconduct when the state's assistant attorney allowed false testimony to go uncorrected.  The post-conviction court denied the petition by written decision on December 20, 2019.  *Id.* at 88-109.  On January 21, 2020, Hamm filed an application for leave to appeal to the Appellate Court of Maryland (*Id.* at 110-137), which was summarily denied on October 28, 2020.  *Id.* at 138-139.

Hamm next filed his federal Petition.  ECF No. 1.  In it, Hamm contends that his trial counsel provided ineffective assistance when she failed to request a jury instruction on alibi witnesses; and second, when she failed to take any action after the assistant state's attorney

supposedly permitted false testimony from Womack to go uncorrected.  ECF No. 1-1 at 4-5.  Respondents argue the Petition must be dismissed as meritless.  ECF No. 4.

## II.    Standard of Review

A petition for a writ of habeas corpus solely may seek vacatur of a conviction that violates the United States Constitution or laws of the United States.   28 U.S.C. § 2254(a) (2018) *see Wilson v. Corcoran*, 562 U.S. 1, 1 (2010); *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).  On habeas review, a federal court must give "considerable deference to the state court decision," and may not grant habeas relief unless the reviewing state court arrived at a "'decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Nicolas v. Att'y Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016) (quoting 28 U.S.C. § 2254(d).  The federal court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence," and "cannot disturb the state court's ruling simply because it is incorrect; it must also be unreasonable."  *Id*.

For a state court's decision to be contrary to established federal law, the decision must rest on a legal conclusion directly at odds with a decision of the United States Supreme Court, or must have confronted facts that are "materially indistinguishable from a relevant Supreme Court" case, but nevertheless arrived at the opposite result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see*

*also Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005); *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014).   A federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411).   Rather, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Barnes*, 751 F.3d at 238 (quoting *White v. Woodall*, 572 U.S. 415, 419–20 (2014)). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply de novo review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge."   *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (internal marks and citations omitted).

## III.    Analysis

Hamm grounds his request for relief in the alleged denial of his Sixth Amendment right to effective assistance of counsel.   ECF No. 1; *see Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 137 S.Ct. 759, 775 (2017).   To mount a successful ineffectiveness claim, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams*, 529 U.S. at 390.   First, the petitioner must show that counsel's performance was deficient; and second, he must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775.

As to the first prong, not every ill-conceived trial decision supports an ineffectiveness claim. Rather, a petitioner must demonstrate that the attorney's performance fell "below an objective standard of reasonableness."   *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104.   This inquiry turns on whether "an attorney's representation amounted to incompetence under

'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). A lawyer discharges her "constitutional responsibility so long as [her] decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). An attorney's decisions carry the "strong presumption" that they fall within "a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. *See also Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

As to the second prong – prejudice – the petitioner must demonstrate how the claimed deficient performance "prejudiced [his] defense." *Id.* at 687. That is, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact, that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Because petitioner must satisfy both prongs of *Strickland*, the court need not address both prongs if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). If the petitioner fails to satisfy either prong, that failure is fatal to the claim. *Strickland*, 466 U.S. at 697; *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015).

With this standard in mind, the Court turns to the Petition.

Hamm first faults his trial lawyer for failing to seek an alibi instruction. As he did during the state post-conviction proceedings, Hamm reiterates that this failure hamstrung his chances of acquittal. ECF No. 4-1 at 23-24. The omitted instruction would have advised the jury that it had "heard evidence that the defendant was not present when the crime was committed," and directed that they "should consider this evidence along with all other evidence in this case." *Id.* at 94.

Having reviewed the whole of the trial, the post-conviction court's conclusion that Hamm could not show prejudice from the missing alibi instruction was neither contrary to nor an unreasonable application of *Strickland.* As the post-conviction court reasoned, although Hamm's counsel erred in failing to request the instruction, it did not materially affect the outcome. Hamm was permitted to present robust alibi evidence, and the remaining instructions adequately covered the same legal terrain such that the missing instruction was "superfluous." *Id.* ECF No. 4-1 at 94. This rationale is well supported. Thus, the Petition as to this claim must be dismissed.

As to Hamm's second contention that counsel failed to properly respond when the state's attorney had disclosed Womack's inconsistent testimony, the same result must follow. At trial, Womack testified that Hamm's girlfriend, Jones, drove the getaway vehicle. ECF No. 5-2 at 283. Jones had not yet testified, so the Court told counsel that Jones should be advised of her right against self-incrimination. This prompted the prosecutor to add that Womack had not previously disclosed Jones' involvement. *Id.* at 311-313. The court permitted Hamm's counsel to cross examine Womack on this subject, and Womack asserted he had previously advised the prosecutor about Jones' participation. ECF 5-3 at 41. Although Hamm's counsel considered moving for a mistrial, she ultimately decided against it. *Id.* at 43.

Hamm now faults counsel's failure to act in the face of what he calls prosecutorial misconduct leading to the propagation of false testimony. Plainly, a prosecutor "'may not

knowingly use false evidence, including false testimony, to obtain a tainted conviction' or 'allow it to go uncorrected when it appears.'" *United States v. Chavez*, 894 F.3d 593, 599 (4th Cir. 2018) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  A conviction secured by a prosecutor's "knowing use of perjured testimony" must be set aside if any reasonable likelihood exists that the "false testimony could have affected the judgment of the jury."  *Chavez*, 894 F.3d at 601 (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).  *See also Burr v. Jackson*, 19 F.4th 395, 410 (4th Cir. 2021), *cert. denied*, 143 S. Ct. 151, 214 L. Ed. 2d 48 (2022).

But as the post-conviction court determined, no evidence supported that the prosecutor knew in advance that Womack would say Jones was the getaway driver, or that such testimony was even false.  ECF No. 4-1 at 106.  As the post-conviction court aptly reasoned,

> Unexpected testimony is not uncommon. To make the leap that unexpected testimony by a witness amounts to an attempt by the prosecutor to condone perjury is insufficient to demonstrate prosecutorial misconduct. To be clear, there is a possibility that the testimony was truthful, but inconsistent with prior statements that were not truthful. Petitioner has not demonstrated that trial counsel's performance was deficient with respect to this allegation of error.

ECF No. 4-1 at 106.  Thus, as the post-conviction court rightly concluded, trial counsel's failure to object to Womack's testimony did not amount to ineffective assistance; and even if counsel was somehow ineffective for failing to seek a mistrial, Hamm had shown no prejudice.  ECF No. 4-1 at 107.  This contention, too, is without merit and must be dismissed.

## IV.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  When a district court rejects

constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation omitted).  Hamm has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability.  Hamm may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

   For the foregoing reasons, the Petition is denied.  A separate Order follows.


11/28/23                                                    /S/
_____                      _____
Date                                                Paula Xinis
                                                    United States District Judge